**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LENS.COM, INC.,

Plaintiff,

vs.

1-800 CONTACTS, INC.,

Defendant.

Case No.: 2:11-cv-00918-GMN-RJJ

**ORDER**

**INTRODUCTION**

Before the Court is Defendant 1-800 CONTACTS, Inc.'s ("1-800") Motion to Dismiss (ECF No. 17). Plaintiff Lens.com, Inc. filed a Response on October 1, 2011 (ECF No. 25) and Defendant filed a Reply on October 21, 2011 (ECF No. 29).

Also before the Court is Defendant's Motion to Transfer Venue (ECF No. 18). Plaintiff filed a Response (ECF No. 26) and Defendant filed a Reply (ECF No. 30).

**FACTS AND BACKGROUND**

This lawsuit concerns the direct-to-consumer market for replacement contact lenses in the United State (the "Relevant Market"). Defendant 1-800 operates in the Relevant Market and has it principal place of business in Utah. (FAC ¶ 5, ECF No. 6.) Starting in 2005 and continuing till 2010, Defendant 1-800 filed 15 different lawsuits against competitors to protect its collection of trademark rights. (*Id.* at ¶67.) Plaintiff Lens.com was one of the competitors sued in the District of Utah and is organized and exists under the laws of the State of Nevada. (*Id.* at 4.) The Utah district court dismissed 1-800's lawsuit against Lens.com on December 14, 2010 after 3 years of litigation and litigations costs were incurred by Lens.com in excess of $1,400,000.00. (*Id.* at ¶¶143, 144, 156.)

Lens.com filed the instant lawsuit on June 6, 2011 alleging that 1-800 was engaging in anticompetitive behavior in filing the 15 "sham lawsuits." (*Id.* at ¶3(d).) Lens.com alleges that 1-800 has violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by entering into unlawful contracts, combinations or conspiracies that unreasonably restrain interstate trade and commerce. (*Id.* at ¶175.) Lens.com also alleges that 1-800 has violated Section 2 of the Sherman Act, 15 U.S.C. §2, in that 1-800 has engaged in unlawful monopoly maintenance and/or has engaged in anticompetitive conduct in an attempt to monopolize the Relevant Market. (*Id.* at ¶¶183, 191.) In addition, Lens.com alleges causes of actions arising under Nevada law. (*See id.*)

1-800 filed the instant motions to dismiss the lawsuit for failure to state a claim and/or to transfer venue to the District of Utah.

## DISCUSSION

### A. Legal Standard-Transfer Venue

Under 28 U.S.C. § 1404, a district court may "in the interest of justice" transfer a case to any other district where venue lies "[f]or the convenience of parties and witnesses" even if venue is proper in the original district under § 1391. § 1404(a). The district court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986). The moving party bears the burden of showing the balance of conveniences favors the transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir.1979).

The Ninth Circuit has identified a number of public and private factors that a district court may consider on a case-by-case basis in deciding whether venue should be transferred. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir.2000). These factors include: (1) the location where the relevant agreements were negotiated and

executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) ease of access to sources of proof. *Id.* The Ninth Circuit has also concluded that the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing. *Id.*

**B. Analysis**

The Court must first determine if the case could have been brought in the proposed transferee district. Plaintiff does not dispute that this case could have originally been brought in Utah federal district court. The Utah federal district court would have subject matter jurisdiction over this matter and Defendant 1-800 is a citizen of Utah, so it would be subject to personal jurisdiction in Utah. The Court therefore must address the various convenience factors.

**1. Interests of Justice and Judicial Economy**

1-800 argues that this case should be transferred to Utah because earlier filed and related cases have already been litigated and adjudicated there. 1-800 argues that many courts consider this as part of their analysis on whether or not to transfer venue. *See Mandani v. Shell Oil Co.*, No. C07-4296 MJJ, 2008 WL 268986, at *2 (N.D.Cal. Jan 30, 2008)(district court transferred an action to the judicial district that had previously adjudicated a related case, even though the related case had concluded); *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F.Supp. 1241, 1243 (S.D.N.Y. 1982) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre- trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results.") (internal quotations omitted); *Hoefer v.*

*U.S. Dep't. of Commerce*, C 00 0918 VRW, 2000 WL 890862, at *3 (N.D. Cal. June 28, 2000) (where there had been a similar lawsuit in a different forum, transferring case to avoid "a significant waste of time and energy" and a "duplicative effort" by the court); *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) ("When related actions are pending in the transferee forum, the interest of justice is generally thought to weigh heavily in favor of transfer") (internal quotations omitted); *Wireless Consumers Alliance, Inc.* v. *T-Mobile USA, Inc.*, No. C 03-3711 MHP, 2003 WL 22387598, at *4 n.3 (N.D. Cal. Oct. 14, 2003) ("pendency of an intimately related case in proposed transferee district remains a strong reason for transfer even if it is improbable that cases would be consolidated due to more advanced status of the pending case.").

The antitrust claims of this case spring for the Utah litigation. 1-800 argues that the claims in this suit will require Lens.com to establish that the Utah action was both objectively baseless and prosecuted in bad faith. Therefore, the court will have to consider many aspect of the Utah action and the Utah courts are intimately familiar with the facts that will be material in this case since. In contrast, this court would have to approach the legal, factual and evidentiary issued presented by these actions without the benefit of prior knowledge of the context. 1-800 argues that courts in similar situations favor transfer. *See, e.g., Von Der Werth* v. *Johns Manville Corp.*, C 07-1456 JSW, 2007 WL 2348707, at *3 (N.D. Cal. Aug. 14,2007) (transferring action to the district that was "intimately familiar with the issues and evidence central to [the] case."); *Rainin Instr., LLC v. Gilson, Inc.*, C 05-4030 JSW, 2006 WL 708660, at *4 (N.D. Cal. Mar. 16, 2006) (same); *Gatdula v. eRST Int'l, Inc.*, No. CIV 2:10-58 WBS CMK, 2011 WL 445798, at *3 (E.D. Cal. Feb. 8,2011) (judicial economy warranted transfer to district in which one judge had already decided key motions and was familiar with the facts of related cases).

Lens.com counters that while courts have considered the pendency of related lawsuits under Section 1404's transfer analysis, it is mainly for consolidation purposes. *Cambridge Filter Corp. v. Int'l Filter Co., Inc.*, 548 F.Supp. 1308, 1310–11 (D. Nev. 1982) ("The feasibility of consolidation is a significant factor in deciding a transfer motion."). In this case, Lens.com argues that the Utah action is not active. Discovery has been closed since September 8, 2008 and the Judge entered summary judgment on December 14, 2010. While 1-800 points to its appeal, the appellate process would not facilitate any efficiencies associated with the transfer of this lawsuit. Furthermore, Lens.com argues that 1-800's prior trademark litigation has been spread among at least six different judges in the Utah district. It argues that that judicial economy would only be achieved if the proposed transfer would result in one judge hearing all related cases at similar stages. *Stored Value Solutions, Inc. v. Card Activation Technologies, Inc.*, 2009 WL 4016158, *3 (D. Del. Nov. 20, 2009) ("While judicial efficiency is an important concern, the cases are presently distributed among five different judges. In order for efficiency to be achieved, the cases would have to be before a single judge. The result is that transferring this case to Illinois would not increase efficiency over what it is currently.").

This Court finds compelling Lens.com's argument that these cases are not intimately related as asserted by 1-800. This is an antitrust action and not a trademark action. Therefore, this case will turn on finite economic issues that were not previously raised and decided, such as market power, market definition, exclusionary conduct and resulting damages. The District of Utah had no chance to delve into these central issues in 1-800's prior trademark litigation against Lens. *Temple v. Guardsmark LLC*, C 09-02124 SI, 2009 WL 2997396 (N.D. Cal. Sept. 16, 2009) (denied transfer of venue

because in part prior judge was unlikely to have delved deeply into the merits of the present claims).

While the evidentiary and factual questions will not be the same in these two cases, they will be similar. This case may benefit from transfer to the District of Utah if a judge who has already been involved in the other litigation is assigned the case. Even then however, the court will be conducting an entirely new legal analysis on the facts and issues. There will be no opportunity for consolidation of the actions or shared discovery that would truly result in judicial economy. Therefore, the court finds that this factor does not weigh in favor of transfer but that this factor would not preclude a transfer if there are other factors that favor it.

**2. Compulsory Process to Compel Witnesses and Sources of Proof**

1-800 argues that it has identified ten witnesses that are Utah residents. Three are current employees, but seven witnesses are not and includes: 1-800's outside counsel in the underlying actions, a third-party affiliate and a former marketing employee (both of whom were deposed in the Utah action), and four witnesses who are members of Len.com's legal team in the Utah action who work in Utah. 1-800 also argues that its sources of proof, i.e. all documents regarding the Utah actions, are located in Utah.

Lens.com argues that 1-800's arguments are weak at best because their employees (Utah residents) can be compelled to appear and testify at trial, *Getz v. Boeing Co.*, 547 F.Supp. 2d 1080, 1084 (N.D. Cal. 2008), and because federal courts are not concerned about the convenience of outside counsel in the transfer analysis. *E. & J. Gallo Winery v. F. & P.S.p.A.*, 899 F.Supp. 465, 466 (E.D. Cal. 1994) ("Convenience of counsel is not a consideration."). However, Lens.com only identifies a single witness that may or may not be necessary or key to the litigation that is a Nevada Corporation, Contact Lens King, Inc. (CLK). 1-800 points out that that CLK is in fact a New York company with its

principle place of business in New York. (Supplement to Request for Judicial Notice, Ex. L ¶6, ECF No. 28.) Lens.com also fails to identify who would actually be inconvenienced where this matter transferred to Utah, whereas 1-800 has. Lens.com also argues that many its non-party witnesses are located closer to Nevada than to Utah and this weighs in favor of non-transfer. These witnesses are located in Washington and California. However, the Court finds this factor negligible considering the proximity of Nevada and Utah.

The Court finds that this factor supports transfer. Lens.com has simply failed to counter 1-800's argument that it would be more convenient for the witnesses if the case was litigated in Utah.

**3. Location of Agreements**

This is an antitrust lawsuit; not a breach of contract lawsuit. Thus, this element does not weigh for or against transfer. *Flynn v. Liner Grode Stein*, 3:09-CV-00422-PMP, 2010 WL 4121886 *5 (D. Nev. Oct. 15, 2010)("This is not a contract action, and thus there were no agreements negotiated or executed either in California or Nevada.").

**4. Governing Law**

Plaintiff brings claims under federal law and Nevada law. Both districts of Nevada and Utah would be equally knowledgeable regarding federal law. However, this factor weighs against transfer of Plaintiff because the District of Nevada would be more knowledgeable with respect to the Nevada state law claims.

5. **Plaintiff's Choice of Forum**

Lens.com is incorporated under the laws of Nevada, which Lens.com argues entitles it to a significant deference to having its forum selection honored. *See Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648, 655 (D. Del. 2008)("[A] corporation's decision to incorporate in a particular state is a rational and

legitimate reason to litigate in that state."). Also, plaintiff's choice of a proper forum is entitled to "paramount consideration." *Piper Aircraft Co.*, 454 U.S. at 255; *Galli v. Travelhost, Inc.*, 603 F.Supp. 1260 (D.Nev. 1985).

1-800 argues that Lens.com's choice of forum should not be given due consideration because Lens.com is engaged in forum shopping. *Williams* v. *Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001)(courts accord little or no deference to a plaintiff's forum choice if there is an indication that it is the product of forum shopping). 1-800 asserts that there is no reason for Lens.com to file suit in Nevada. Lens.com, while a Nevada corporation, has its principal place of business in Missouri. (Request for Judicial Notice, Ex. B ¶7 ECF No. 19–1; Request for Judicial Notice, Ex. H ¶7, ECF NO. 19–4.)

While this Court finds that this forum does not have any meaningful connection to the antitrust controversy, plaintiff's choice of forum is still entitled its "paramount consideration." Accordingly, the Court finds this factor to weigh against transfer.

**6. Respective Contacts with Forum and Contacts Relating to the Cause of Action in the Forum**

1-800 argues that there is little to no connection between this action and the state of Nevada. It asserts that Lens.com's allegations have to deal with 1-800's litigation tactics in Utah. Additionally, 1-800 argues that since the action sounds in antitrust in which the alleged geographic market is national "[d]eference to the plaintiff's chosen forum is minimized [because the] forum has no meaningful connection to the controversy." *United States v. H & R Block, Inc.*, 789 F.Supp.2d 74, 79 (D.D.C. 2011).

Lens.com argues that 1-800 actively seeks and conducts substantial retail business in Nevada. 1-800 has benefited financially by selling its goods in commerce directly with Nevada residents. Also, with respect to the current litigation, 1-800 sued a Nevada

corporation. The nature of the current suit is anticompetitive practices which have been inflicted on Nevada consumers.

However, these same anticompetitive practices would have similar consequences in Utah or any other forum. Thus, there is nothing compelling in Lens.com's arguments that 1-800's actions were directed at Nevada or its citizens any more than any other forum. Therefore, this factor does not weigh for or against transfer.

**7. Costs of Litigation**

One expense in this case would be the cost of travel between the two different forums. The distance between Las Vegas, Nevada and to the District of Utah in Salt Lake City is 362 miles. There are many flights between the two cities daily and is a relatively short flight (under one hour). 1-800 argues that litigation in Nevada will increase its own litigation expenses. Lens.com did not argue that its litigation expenses would increase if the case would be transferred to Utah, although it did offer that it is prepared to take depositions in Utah of any employees located there, which would alleviate some burden on 1-800. However, this factor does weigh in favor of transfer since 1-800 has many of its witnesses and counsel in Utah while Lens.com has only identified one potential witness from Nevada.

**8. Relevant Public Policy**

Lens.com argues that Nevada has a strong interest in adjudicating allegations of anticompetitive conduct that impact Nevada consumers. Specifically, Lens.com argues that "[t]he Nevada Legislature issued a directive in connection with the Nevada Unfair Trade Practices Act that reads: 'It is the policy of this state and the purpose of this chapter to . . . [p]rohibit acts in restraint of trade in commerce, . . . [to] [p]reserve and protect the free, open and competitive nature of our market system, . . . [and to] [p]enalize all persons engaged in such anticompetitive practices to the full extent allowed

by law, in accordance with the penalties provided herein. N.R.S. §598A.030.'" (Response p. 22:12–18.)

In conclusion, the Court finds that many of the factors in this case are neutral at best. The two factors that are most distinctive in this case are in the interests of justice, including judicial economy, and the convenience of the parties and witnesses. Here, judicial economy supports transfer at least somewhat because the Utah courts are familiar with the underlying fact of this case. Lens.com did not demonstrate that it would be better for their witnesses to appear in Nevada while 1-800 arguably did. Further, while Lens.com is a Nevada corporation, having its headquarters in Missouri does lend to the presumption that plaintiff's choice of forum should not be honored (especially when Lens.com did not identify if its key witnesses and discovery material are indeed located in Nevada). Accordingly, this Court finds that 1-800 has carried its burden to demonstrate that transferring this case would result in convenience for parties and witnesses and would be in the interest of justice.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant 1-800 CONTACTS, Inc.'s Motion to Transfer Venue (ECF No. 18) is GRANTED.

This case shall be transferred to the District of Utah.

IT IS FURTHER ORDERED that Defendant 1-800 CONTACTS, Inc.'s Motion to Dismiss (ECF No. 17) is DENIED as moot.

DATED this __4__ day of April, 2012.

______________________________
Gloria M. Navarro
United States District Judge